1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| A.G.,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 21-cv-03535-LB<br><br>**ORDER GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 25, 31 |

## INTRODUCTION

The plaintiff A.G. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claims for disability-insurance and supplemental-security-income benefits under Titles II and XVI of the Social Security Act, respectively.[1] The plaintiff moved for summary judgement, the Commissioner opposed the motion and filed a cross-motion for summary judgement, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision without oral argument. The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings.

---

[1] Mot. – ECF No. 25. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*; Cross-Mot. – ECF No. 31; Reply – ECF No. 32.

ORDER – No. 21-cv-3535-LB

1

<strong>STATEMENT</strong>

**1. Procedural History**

The plaintiff applied for disability-insurance benefits on May 22, 2018, and for supplemental-security-income benefits on May 30, 2018.[3] She alleged the following medical conditions in support of her application: carpal-tunnel syndrome, fibromyalgia, diabetes, high blood pressure, back and knee problems, osteoarthritis in the back, and a neck problem.[4] Her claims were denied on September 13, 2018, and again on January 4, 2019.[5] On May 26, 2020, the ALJ held a hearing and heard testimony from a vocational expert (VE) and the plaintiff.[6] The ALJ issued an unfavorable decision on June 17, 2020.[7] On March 9, 2021, the Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final administrative decision.[8] The plaintiff filed this action on May 11, 2021, and the parties each moved for summary judgement.[9] All parties consented to magistrate-judge jurisdiction.[10]

**2. Administrative Proceedings**

**2.1   Disability-Determination Explanations**

During the administrative process, non-examining doctors generated two disability-determination explanations (at the initial and reconsideration levels).

At the initial level, the state doctors found the following impairments to be severe: (1) carpal-tunnel syndrome (CTS), (2) osteoarthrosis and allied disorders, (3) hypertension, (4) diabetes

---

[3] AR 15. Administrative Record (AR) citations refer to the page numbers in the bottom-right corner of the AR.

[4] AR 297.

[5] AR 15.

[6] AR 33–62.

[7] AR 15–25.

[8] AR 1–3.

[9] Compl. – ECF No. 1; Mot. – ECF No. 25; Cross-Mot. – ECF No. 31.

[10] Consents – ECF Nos. 11, 13.

United States District Court
Northern District of California

mellitus, and (5) fibromyalgia.[11] The doctors found that the plaintiff was not disabled despite these impairments.[12]

On reconsideration, the doctors found only three impairments to be severe: (1) CTS, (2) osteoarthrosis and allied disorders, and (3) fibromyalgia.[13] They again found that the plaintiff was not disabled.[14]

## 2.2   Administrative Hearing

The ALJ held a hearing on May 26, 2020. It was conducted telephonically due to the COVID-19 pandemic.[15] The ALJ heard testimony from the plaintiff and VE K. Diane Kramer.[16]

### 2.2.1   The Plaintiff's Testimony

The plaintiff testified that she was forty-four and had worked for over thirteen years (until May 2018) providing in-home care for her mother.[17] Her duties included taking her mother to the doctor's office, cooking meals, washing clothes, running errands, washing dishes, and going shopping.[18] Since she stopped working for her mother, the plaintiff has not sought other work because of her various physical problems.[19]

During this time, the plaintiff developed CTS in both hands.[20] As a result, she "started getting slower" and dishes started to "slip out of [her] hands."[21] By the time she stopped working for her mother, her hands were "out of commission."[22] The plaintiff was also diagnosed with rheumatoid arthritis and fibromyalgia, which made it difficult for her to sit for longer than five to ten

---

[11] AR 79, 93.

[12] AR 84, 98.

[13] AR 108, 122.

[14] AR 113, 127.

[15] AR 15.

[16] AR 33–62.

[17] AR 39–40.

[18] AR 41, 50.

[19] AR 40.

[20] AR 41.

[21] *Id.*

[22] AR 42.

United States District Court
Northern District of California

United States District Court
Northern District of California

minutes.[23] Furthermore, she experienced muscle spasms and swollen knees, which limited her ability to stand for more than a few minutes.[24] And she was diagnosed with diabetes, leading her to start eating different kinds of meals.[25] Finally, since moving out of her mother's residence, the plaintiff's depression has become severe and she struggles to get out of bed and do things for herself.[26]

The plaintiff's medical issues have also affected her ability to care for herself and perform household tasks. Before the pandemic, her daily routine consisted of running errands, going to many doctor's appointments, and cooking and cleaning lightly.[27] But now, due to the numbness and sharp, needle-like pain in her hands, it is difficult or impossible for her to cook, handle dishes, brush her hair, put on shoes, use a cell phone, or drive.[28]

The plaintiff underwent carpal-tunnel-release surgery on her right hand in 2018, but the surgery did not relieve her hand pain at all.[29] She has also tried therapy, injections, and medications to treat her various sources of pain, but she still has problems with her knees, legs, back, and hands.[30]

### 2.2.2   The VE's Testimony

VE K. Diane Kramer also testified at the hearing on May 26, 2020.[31] The ALJ asked the VE to classify the plaintiff's prior work according to the Dictionary of Occupational Titles, and the VE responded that the plaintiff worked as a home health attendant (medium, SVP 3).[32]

---

[23] AR 42, 45, 48–49.

[24] AR 43, 51.

[25] AR 51–52.

[26] AR 49–50.

[27] AR 44–45.

[28] AR 46–48.

[29] AR 40–41.

[30] AR 43.

[31] AR 54–60.

[32] AR 55.

The ALJ posed a hypothetical to the VE: a person who is capable of "lifting 20 pounds occasionally and 10 pounds frequently," "[s]itting up to eight hours a day," standing and walking up to four hours a day, frequent bilateral handling, occasional bilateral gripping (but with only tight gripping causing pain), and occasional "stooping and crouching," but who requires a "sit, stand option" and cannot kneel or crawl.[33] The VE testified that the hypothetical person could not perform the plaintiff's past work, but could perform the following jobs: (1) mail clerk; (2) collator operator; and (3) office helper.[34]

The plaintiff's attorney then posed a hypothetical to the VE: a person who matches the ALJ's hypothetical but can only occasionally, rather than frequently, perform "handling, fingering, and gripping" bilaterally.[35] The VE responded that no jobs are available to such a person.[36]

The plaintiff's attorney posed a second hypothetical to the VE: a person who requires "extra breaks throughout the workday for any number of reasons," totaling fifteen percent of the workday, during which time they are off-task.[37] The VE again responded that no jobs are available to such a person.[38]

### 2.3   ALJ Findings

The ALJ analyzed the five-step process to determine whether the plaintiff was disabled and determined that she was not.[39]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged disability-onset date of May 1, 2018.[40]

---

[33] AR 55–56.

[34] AR 56–58.

[35] AR 59.

[36] *Id.*

[37] *Id.*

[38] AR 59–60.

[39] AR 15–25.

[40] AR 17.

United States District Court
Northern District of California

At step two, the ALJ found that the plaintiff had the following severe impairments: (1) bilateral CTS; (2) morbid obesity; (3) adult-onset diabetes; and (4) osteoarthritis of the right knee.[41]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity requirements for any listed impairment.[42]

Before reaching step four, the ALJ determined that the plaintiff had the residual functional capacity (RFC) "to perform the full range of light work" except that she could:

> [L]ift 20 pounds occasionally and 10 pounds frequently; sit for 8 hours; stand/walk for 4 hours in an 8-hour workday; a sit/stand option that allows sitting or standing alternately, at will; never climb ladders, ropes, or scaffolds; occasional climbing of stairs or ramps; never kneeling or crawling; occasional stooping or crouching; frequent, but not constant handling bilaterally; and occasional gripping bilaterally.[43]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[44]

At step five, the ALJ found that the following jobs were available to the plaintiff: (1) office helper; and (2) collator operator.[45]

The ALJ found that the plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore concluded that the plaintiff was "not disabled."[46]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d

---

[41] AR 17–18.

[42] AR 18–19.

[43] AR 19.

[44] AR 24.

[45] AR 24–25.

[46] AR 25.

1   586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than

2   a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

3   might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

4   Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the

5   [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293

6   (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a

7   different outcome, the court must defer to the ALJ's decision and may not substitute its own

8   decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not

9   reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d

10  1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

12      A claimant is considered disabled if (1) he suffers from a "medically determinable physical or

13  mental impairment which can be expected to result in death or which has lasted or can be expected

14  to last for a continuous period of not less than twelve months," and (2) the "impairment or

15  impairments are of such severity that he is not only unable to do his previous work but cannot,

16  considering his age, education, and work experience, engage in any other kind of substantial

17  gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-

18  step analysis for determining whether a claimant is disabled within the meaning of the Social

19  Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

20      **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the
21      claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a
        substantially gainful activity, then the claimant's case cannot be resolved at step one, and the
22      evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

23      **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the
        claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. §
24      404.1520(a)(4)(ii).

25      **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments
        described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the
26      claimant's impairment does not meet or equal one of the impairments listed in the regulations,
        then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20
27      C.F.R. § 404.1520(a)(4)(iii).

28      **Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she

*United States District Court*
*Northern District of California*

has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs*., 784 F.2d 1417, 1419 (9th Cir. 1986).

# ANALYSIS

The plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting her symptom testimony about her hand and finger impairments.[47] The Commissioner counters that the ALJ relied on multiple permissible factors and sufficiently explained her reasoning.[48] Alternatively, the Commissioner contends that any error was harmless.[49] The court remands on this ground.

## 1. Whether the ALJ Erred in Rejecting the Plaintiff's Symptom Testimony

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*; *see also* 20 C.F.R. § 404.1529(a). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear

---

[47] Mot. – ECF No. 25 at 12–18.

[48] Cross-Mot. – ECF No. 31 at 5–6.

[49] *Id.* at 6–7.

and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Molina*, 674 F.3d at 1112 (cleaned up).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (in order to have a meaningful appellate review, the ALJ must explain its reasoning; "[g]eneral findings are insufficient"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (cleaned up); *see also* 20 C.F.R. § 416.929. And the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and the ALJ identified no evidence of malingering. But the ALJ subsequently found that the plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent" with the medical and other evidence in the record.[50] The ALJ did not provide convincing reasoning to reject the plaintiff's testimony about her hand and finger impairments, so remand is appropriate.

First, the ALJ concluded that the plaintiff's October 2018 right-open-carpal-tunnel-release surgery resolved her CTS.[51] Specifically, the ALJ relied on an early post-operative note that stated that the plaintiff was "doing well" and the hand was "healing and range of motion was within normal limits."[52] The ALJ further reasoned that, even though the plaintiff "said [the] surgery was not successful at alleviating symptoms," "the record contains no further objective testing[] [that]

---

[50] AR 21.

[51] AR 22.

[52] *Id.*

shows CTS [to be] a severe condition."[53] But the ALJ also said that "[t]he most recent treatment note indicates pain is chronic."[54] Indeed, in that treatment note, the plaintiff was prescribed medication "as needed only for severe pain."[55] It is not convincing reasoning for the ALJ to rely on the early treatment note in combination with an alleged absence of later objective indications of severe CTS, when the plaintiff was undergoing a treatment plan aimed at alleviating "chronic" and "severe" pain. Moreover, the surgery was on only one hand, which was not the plaintiff's dominant hand, and objective medical evidence continued to support a diagnosis of bilateral CTS.[56] *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1102 (N.D. Cal. 2019) (the ALJ must "build an accurate and logical bridge from the evidence to her conclusions").

Second, the ALJ relied on "[p]roviders limit[ing] treatment to the prescription of medication" such as Tylenol-Codeine #3 — a "conservative" treatment — to reject the plaintiff's symptom testimony.[57] In support of this reasoning by the ALJ, the Commissioner cites *Cattano v. Berryhill.* There, the Ninth Circuit held that "[t]he ALJ properly discounted [the claimant's] testimony . . . because of his conservative treatment regime," particularly because his claims "[were] undermined by his post-surgery recoveries and his use of only over-the-counter [medication] for relief."[58] 686 F. App'x 408, 411 (9th Cir. 2017). But Tylenol-Codeine #3 is an opioid. *Elliott v. Tseng*, No. 2:11-CV-03118 KJM, 2014 WL 3966377, at \*14 (E.D. Cal. Aug. 13, 2014). Moreover, the *Cattano* court held that the ALJ properly discounted the plaintiff's testimony because the ALJ did so based on multiple grounds besides the over-the-counter medication: the plaintiff's inconsistent testimony and multiple successful post-surgery recoveries. 686 F. App'x at 411. Here, there is no inconsistent testimony (as explained below), and there was no successful post-surgery recovery (as

---

[53] AR 22.

[54] *Id.* (citing AR 1192, 1197).

[55] AR 1197.

[56] AR 17; Reply – ECF No. 32 at 4 (citing AR 1227).

[57] AR 21–22.

[58] Cross-Mot. – ECF No. 31 at 6.

1    explained above). In sum, it was not convincing for the ALJ to reject the plaintiff's symptom

2    testimony based on a conservative treatment program.

3        Third, the ALJ reasoned that the plaintiff gave conflicting testimony about her reason for

4    leaving her job as caretaker for her mother. The plaintiff "initially said she stopped working when

5    she moved out of her mother's house and her sister took over," but "then said it was difficult for

6    her to do dishes, etc[.], but she 'pushed through the pain.'" And she "told the consultative

7    physician that she stopped working when she moved away from her job."[59] But the plaintiff's

8    testimony was not inconsistent because she testified that when she stopped working for her

9    mother, her hands were "out of commission."[60] It could be that her sister took over the job, and the

10   plaintiff moved away from the job, because of the fact that her hands were then "out of

11   commission." Thus, the ALJ's reasoning on this point was not convincing.

12       The Commissioner cites *Drouin v. Sullivan* to support the contention that the ALJ properly

13   relied on the notion that the plaintiff left her job for reasons other than her alleged disability.[61] 966

14   F.2d 1255, 1256 (9th Cir. 1992). There, the Ninth Circuit held that the ALJ properly rejected the

15   plaintiff's subjective testimony, not only because the plaintiff left her job for reasons other than

16   her alleged disability, but also because she took no medication for her alleged pain, underwent no

17   treatment for her alleged pain, and there was no indication at the hearing that the plaintiff was

18   suffering from any pain. *Id.* at 1258–59. Here, the plaintiff took medication for her pain,

19   underwent a range of treatment for her pain, and testified at her hearing that she was currently

20   suffering from pain.[62] Thus, again, the ALJ did not provide convincing reasoning to discount the

21   plaintiff's pain testimony.

22       Fourth, the Commissioner asserts that the ALJ identified the plaintiff's activities of daily

23   living — light cooking and cleaning — as grounds to reject the plaintiff's symptom testimony.[63] It

24

25   [59] AR 22–23.

26   [60] AR 42.

     [61] Cross-Mot. – ECF No. 31 at 6.

27   [62] AR 23, 41–42, 49, 58, 137.

28   [63] Cross-Mot. – ECF No. 31 at 6 (citing AR 24).

is not clear that the ALJ relied on this ground, because the ALJ only mentioned the activities of daily living in connection with her overall RFC assessment, not her analysis of the plaintiff's testimony.[64] *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

Even if it was clear that the ALJ relied on his ground, the ALJ's reliance is unconvincing. Daily activities can only be relied upon by the ALJ "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639. "The ALJ must make specific findings relating to the daily activities and their transferability." *Id.* (cleaned up). The ALJ did not do so here.

In sum, the court remands for the ALJ to reconsider the plaintiff's testimony about her hand and finger impairments.

The Commissioner's remaining arguments do not change this result. For one, the Commissioner argues that the plaintiff "rejected recommended treatment," which leans against crediting the plaintiff's testimony under *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th. Cir. 2008).[65] But the relevant treatment rejection that the ALJ referenced had to do with the plaintiff's knee pain.[66] On appeal, the plaintiff challenges only the ALJ's rejection of her testimony about her hand and finger impairments.[67]

Finally, the Commissioner contends that any error by the ALJ was harmless because the ALJ's RFC "included limitations for gripping and handling," which "resolve[s] the issues related to Plaintiff's CTS."[68] But as the plaintiff points out, the VE testified that if a person in the plaintiff's position could only occasionally, rather than frequently, perform "handling, fingering, and

---

[64] AR 23–24.

[65] Cross-Mot. – ECF No. 31 at 6.

[66] AR 21.

[67] Mot. – ECF No. 25 at 12.

[68] Cross-Mot. – ECF No. 31 at 7.

1    gripping" bilaterally, no jobs would be available to her.[69] The ALJ's RFC incorporated "frequent[]

2    but not constant handling bilaterally."[70] Thus, had the ALJ accepted the plaintiff's symptom

3    testimony and limited her handling ability to occasional in the RFC, the ALJ's ultimate decision

4    would have been different. The ALJ's error was therefore not harmless. *Carmickle v. Comm'r,*

5    *Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

6

7    **2.    Whether the Court Should Remand for Further Proceedings or Determination of**

8    **Benefits**

9        The court has "discretion to remand a case either for additional evidence and findings or for an

10    award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *McAllister v.*

11    *Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further

12    proceedings or simply to award benefits is within the discretion of [the] court."). "[I]f additional

13    proceedings can remedy defects in the original administrative proceeding, a social security case

14    should be remanded." *Garrison*, 759 F.3d at 1019 (cleaned up).

15        Here, remand is appropriate to remedy defects in the original proceeding.

16

17                                        **CONCLUSION**

18        The court grants the plaintiff's motion for summary judgement, denies the Commissioner's

19    cross-motion for summary judgement, and remands the case for further proceedings consistent

20    with this order.

21        **IT IS SO ORDERED.**

22        Dated: September 20, 2022

23

24                                        _____
                                         LAUREL BEELER
                                         United States Magistrate Judge

25

26

27    [69] AR 59.

28    [70] AR 19.